**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

KARMO TAMANG,

> *Plaintiff,*

v.

KALPANA MEHRA, et al.,

> *Defendants.*

Case No. **1:17cv370 (LMB/MSN)**

<u>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**</u>

Maryam Hatcher (VSB No. 84252)
Beveridge & Diamond, PC
1350 I Street N.W., Suite 700
Washington, D.C. 20005
Telephone: (202) 789-6064
Fax: (202) 789-6190
mhatcher@bdlaw.com

Matthew K. Handley (admitted *pro hac vice*)
Christine T. Dinan (VSB No. 84556)
Washington Lawyers' Committee
for Civil Rights and Urban Affairs
11 Dupont Circle N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 319-1000
Fax: (202) 319-1010
matthew_handley@washlaw.org
christine_dinan@washlaw.org

August 14, 2017

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 2

STANDARD OF REVIEW ........................................................................................................ 6

ARGUMENT ............................................................................................................................. 7

I.      The Claims Made in the Amended Complaint Are Not Time-Barred and Should
        Not Be Dismissed ..........................................................................................................7

        A.      The Law Does Not Support Defendants' Statute of Limitations Defense..............7

                i.      Plaintiff's  TVPRA claim is not time-barred ............................................. 7

                ii.     Plaintiff's FLSA claim is not time-barred ................................................. 9

                iii.    Plaintiff's Breach of Contract claim is not time-barred............................. 9

        B.      The Amended Complaint Sufficiently Alleges That Circumstances Exist to
                Allow for Equitable Tolling of Any Applicable Statutes of Limitation ...............10

II.     The Level of Detail Provided in the Amended Complaint Regarding the Hours the
        Plaintiff Worked is More than Sufficient to Overcome a Motion to Dismiss .................13

III.    Count I of the Amended Complaint Sufficiently Pleads Facts to Allege a
        Prohibited Means of Forced Labor ...............................................................................15

IV.     Count III of the Amended Complaint Sufficiently Pleads Breach of Contract
        Claims Against Each Defendant ...................................................................................20

V.      There is No Valid Basis to Strike Any Portion of the Amended Complaint ...................21

CONCLUSION ....................................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................. 6,19

*Baxla v. Chaudhri*,
  225 F. Supp. 3d 588 (E.D. Va. 2016) ......................................................... 8,16,18

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................. 6,13,19

*Calderon v. GEICO Gen. Ins. Co.*,
  809 F.3d 111 (4th Cir. 2015) ..................................................................... 9

*Cruz v. Maypa*,
  773 F.3d 138 (4th Cir. 2014) ..................................................................... 7,11,12

*Deressa v. Gobena*,
  No. 1:05CV1334(JCC), 2006 WL 335629 (E.D. Va. Feb. 13, 2006) ............... 11,12

*Enomoto v. Space Adventures, Ltd.*,
  624 F. Supp. 2d 443 (E.D. Va. 2009) ......................................................... 20

*Erickson v. Pardus*,
  551 U.S. 89 (2007) .................................................................................... 6,13

*Hall v. DirecTV*,
  846 F.3d 757 (4th Cir. 2017) ..................................................................... 13,14

*Harris v. Hutchinson*,
  209 F.3d 325 (4th Cir. 2000) ..................................................................... 11

*Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624-CIO v.*
*Virginia Intern. Terminals, Inc.*,
  904 F. Supp. 500 (E.D. Va 1995) ............................................................... 21

*Jones v. Rogers Mem'l Hosp.*,
  442 F.2d 773 (D.C. Cir. 1971) ................................................................... 11

*Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*,
  684 F.3d 462 (4th Cir. 2012) ..................................................................... 6

*Lagasan v. Al-Ghasel*,
    92 F. Supp. 3d 445, 453 (E.D. Va 2015)…………………………………………………………..18

*Landers v. Quality Communs. Inc.*,
    771 F.3d 638, 646 (9th Cir. 2015)…………………………………………………...…..14,15

*Morataya v. Nancy's Kitchen of Silver Spring, Inc.*,
    GJH-13-01888, 2016 U.S. Dist. LEXIS 66985 (D. Md. May 20, 2016) ................................ 14

*Republic Ins. Co. v. Spring Menders, Inc.*,
    2:11-cv-69, 2011 WL 2838179 (E.D. Va. July 14, 2011) ...................................................... 20

*Santamaria v. GL Construction, Inc.*,
    No. 115-cv-00259 (LMB/IDD), 2015 WL 13035523, (E.D. Va. Dec. 28, 2015)……….……12

*Shero v. City of Grove*,
    510 F.3d 1196 (10th Cir. 2007) ........................................................................................ 6

Sexton v. Franklin First Fin., Ltd.,
    No. 08-CV-04950 (JFB) (ARL), 2009 WL 1706535, (E.D.N.Y. June 16, 2009)……………11

*Shukla v. Sharma*,
    No. 07-cv-2972, 2012 U.S. Dist. LEXIS 18392 (E.D.N.Y. Feb. 14, 2012) ........................... 16

*United States v. Cruikshank*,
    92 U.S. 543 (1875)........................................................................................................ 19

*United States v. Bradley*,
    390 F.3d 145 (1st Cir. 2004) ........................................................................................... 16

*United States v. Farrell*,
    563 F.3d 364 (8th Cir. 2009) ........................................................................................... 16

*United States v. Ibarra*,
    502 U.S. 1 (1991)........................................................................................................... 10

United States v. Peterson ,
    544 F. Supp. 2d 1363 (M.D. Ga. 2008)…………………………………………………18,19

*United States v. Veerapol*,
    312 F.3d 1128 (9th Cir. 2002) ........................................................................................ 16

*Waste Mgmt. Holdings v. Gilmore*,
    252 F.3d 316 (4th Cir. 2001) ................................................................................... 21, 22

**Federal Statutory Authorities**

iii

18 U.S.C. § 1589.................................................................................................... 1,8,15

18 U.S.C. § 1589(a) .......................................................................................... 15,16,18

18 U.S.C. § 1589(a)(2).................................................................................................. 8

18 U.S.C. § 1589(c)(1)................................................................................................ 16

18 U.S.C. § 1589(c)(2)................................................................................................ 16

18 U.S.C. § 1590 …………………………………………………………………..15,17

18 U.S.C. § 1590(a) ................................................................................................... 17

18 U.S.C. § 1592 ................................................................................................ 8,15,17

18 U.S.C. § 1593A…………………………………………………………...………..8

18 U.S.C.S. § 1595(c) ................................................................................................. 7

29 U.S.C. § 201 .......................................................................................................... 1

29 U.S.C.S. § 255(a) ................................................................................................... 9

**Federal Rules of Civil Procedure**

Rule  8(a)(2) .......................................................................................................... 6,13

Rule 12(b)(6)........................................................................................................... 1,6

Rule 12(f) ............................................................................................................. 21,22

Rule 12(f)(2) ............................................................................................................. 21

**State Statute**

Va. Code § 8.01-246(2) ............................................................................................... 9

Plaintiff Karmo Tamang ("Plaintiff" or "Ms. Tamang") hereby opposes Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) (the "Motion to Dismiss"), Dkt. 18. For the reasons set forth below, Ms. Tamang respectfully requests the Court deny the Motion to Dismiss in full.

## INTRODUCTION

Ms. Tamang is a domestic worker from Nepal, who, for more than 10 years, was exploited and abused by her household employers (Defendants), who preyed upon Ms. Tamang's unfamiliarity with the United States, inability to speak English, and dire economic circumstances, treating Ms. Tamang as an indentured servant. *See* Amended Complaint ("Compl.") at 1. During her employment, Ms. Tamang worked 16-20 hour days, seven days a week, and was forced to work without pay, adequate food or health care. *Id.* Isolated from others and without financial means to flee from the forced labor into which her employers had deceptively lured her, Ms. Tamang had no choice but to continue working for her employers for more than 10 years. *Id.* Fearing that refusal to abide by her employers' excessive and exploitative demands would result in possible: 1) arrest and detention, 2) forfeit of the payments due to her for the years worked without pay; and 3) punishment of Ms. Tamang's sister who also worked for Defendants' family in India, Ms. Tamang endured Defendants' demands until she was ultimately rescued from Defendants in 2014. *Id.*

Ignoring the facts alleged in the Amended Complaint, Defendants raise a series of unavailing arguments in an attempt to dismiss Plaintiff's Complaint. First, Defendants incorrectly contend that the Plaintiff's federal claims under Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1589, et. seq. ("TVPRA") and Fair Labor Standards Act, 29 U.S.C. §§ 201 et. seq. ("FLSA") and Plaintiff's Virginia breach of contract claim are all time-barred. As described herein, each of Plaintiff's claims were filed within the applicable statute of

1

limitations.  Second, Defendants incorrectly argue that the Amended Complaint should be dismissed because Plaintiff failed to plead (1) sufficient facts about the number of hours that Plaintiff worked to plausibly give rise to an FLSA claim; (2) facts that plausibly give rise to a forced labor claim under TVPRA; and (3) facts that demonstrate the existence of a single employment contract signed by both Defendants.  As demonstrated below, the Amended Complaint more than sufficiently pleads facts to support Plaintiff's claims.  Lastly, Defendants' conclude by making an untimely and misplaced request that the Court strike certain allegations. For the reasons described in this brief, Plaintiff respectfully requests that Defendants' Motion to Dismiss be denied.

## **STATEMENT OF FACTS**

After working as a domestic worker for Defendants' family in India for several years, Ms. Tamang was recruited by Defendant Mehra to come work as a domestic worker in the United States, where Defendant Mehra was employed by the World Bank.  Compl. at ¶9.  The offer of employment in the U.S. came with multiple promises that would benefit Ms. Tamang and help lift her and her family in Nepal out of poverty.  Compl. at ¶¶10-13.  These promises (which were conveyed not only to Ms. Tamang, but to the U.S. State Department) included:

1. A guaranteed hourly rate of pay (ranging from $7.40/hour to $12/hour over the course of Ms. Tamang's employment);

2. Regular and reasonable hours of work per week;

3. Paid holidays, sick days and vacation days;

4. Room and board, the cost of which would not be deducted from Ms. Tamang's pay; and

5. Secure access by Ms. Tamang to her bank accounts.

*Id.*

2

Unfortunately, the promises made by Defendants to lure Ms. Tamang into their employ in the U.S. were nothing more than written words.  Instead, in November 2003, Defendants began an indentured servitude relationship with Ms. Tamang, which lasted more than a decade, during which time Ms. Tamang was forced to work 16 to 20 hour days, seven days a week with virtually no pay.  Compl. at ¶¶18, 22-23.  Her job responsibilities quickly expanded beyond those of the household for which she was hired to include work at the house of Defendant Mehra's sister (Defendant Vandana Nandwani).  Compl. at ¶¶16-17.

During Ms. Tamang's employment by Defendants, Ms. Tamang was never given a paycheck.  Compl. at ¶22.  Instead, Defendants repeatedly told Ms. Tamang that her wages were being kept in a bank account in the U.S. for her, but no record of this account was ever provided to Ms. Tamang.  *Id.*  Defendants never gave Ms. Tamang access to the bank account at which they claimed her wages were being held, and they refused to pay her the wages they claimed were accumulating in the bank despite Ms. Tamang's persistent pleas throughout the years.  *Id.* Although Defendants very rarely provided Ms. Tamang small amounts of cash, there were times when years would pass with Ms. Tamang receiving no money from Defendants. Compl. at ¶23. Rather than pay Ms. Tamang for her labor, Defendants repeatedly promised to sponsor Ms. Tamang for a green card that they said would one day entitle her to legal permanent residency in the U.S. and additional benefits. Compl. at ¶24.

During the course of Ms. Tamang's employment, Defendants were threatening and abusive to her, requiring her to work when sick, to work up to 20 hours per day to complete her tasks, and denying Ms. Tamang time to eat and the ability to visit the doctor.  Compl. at ¶28. Forced to work excessive hours on her feet with no rest and poor nutrition, Ms. Tamang

developed health problems that Defendants ignored, denying Ms. Tamang the ability to see a doctor.  Compl. at ¶31.

Ms. Tamang was consistently told that she would be arrested if she tried to leave the Defendants' homes and Defendants' employment, and would then never be able to see Ms. Tamang's family in Nepal again.  Compl. at ¶29.  Ms. Tamang was repeatedly told to be grateful that Defendants were assisting her in obtaining a green card, and that she could only leave if she repaid the money it cost Defendants to pay for Ms. Tamang's green card, which Defendants said cost thousands of dollars.  Compl. at ¶30.  As Defendants never paid Ms. Tamang the wages she was owed, Ms. Tamang had no ability to pay Defendants the amount they demanded.  *Id.*

Defendants' failure to pay Ms. Tamang, coupled with Ms. Tamang's social isolation and inability to speak English, made it impossible for her to freely leave Defendants' employment. Compl. at ¶¶8, 47.  Although Ms. Tamang returned to India and Nepal three times during the course of her employment with Defendants, these trips were facilitated by Defendants, who took Ms. Tamang to and picked her up from the airport, and at whose household in India Ms. Tamang was forced to work during the trips.  Compl. at ¶24.  One of the primary purposes of the trips was to renew Ms. Tamang's visa that allowed her to work for the Defendants.  *Id.*  Having received virtually no compensation yet from Defendants, and fearful that a failure to return to their employment would result in a complete loss of the chance to ultimately be compensated, Ms. Tamang felt compelled to return to work for the Defendants.  Compl. at ¶33.  Ms. Tamang further feared that failure to return to Defendants' household could result in retribution to her sister, who worked for Defendants in India, and could jeopardize Ms. Tamang's ability to receive the green card for which Defendants promised to sponsor Plaintiff.  *Id.*

4

Even after Ms. Tamang's green card was issued, however, Defendants did not allow Ms. Tamang to retain it.  Compl. at ¶34.  Instead, Ms. Tamang was told of the existence of the green card and was provided a brief glimpse of it.  *Id.*  Defendants kept the green card in their own possession, keeping it in a private cabinet in Defendant Nandwani's bedroom.  *Id.*

As work-without-pay conditions, for seven days a week, 16-20 hours per day, continued into 2014, and as Defendants' unwillingness to provide Ms. Tamang with her green card became clear, Ms. Tamang tried to escape from Defendants' employment. Compl. at ¶35.  Ms. Tamang gained access to a cell phone and the number of a relative who lived in New York.  Compl. at ¶36.   Ms. Tamang contacted this relative, who then reached out to an immigrant rights organizations, Adhikaar (a non-profit organization dedicated to helping Nepali immigrants in the United States) and Adhikaar reached out to CASA de Maryland (a non-profit organization assisting low wage workers in the Maryland area) for assistance.  *Id.*

With short notice, Ms. Tamang was informed that an attempt to rescue her was being made.  Compl. at ¶37.  Ms. Tamang surreptitiously retrieved her green card from Defendant Nandwani's bedroom from the cabinet where Ms. Tamang believed it was being held.  *Id.* Because Ms. Tamang was illiterate and had never been told the address at which Defendants resided, Ms. Tamang asked a garden worker she spotted at a neighbor's house to take a picture of a piece of Defendant Mehra's mail and to text that picture to Ms. Tamang's relative, so that Ms. Tamang's rescuers would know where Ms. Tamang was living.  Compl. at ¶38.  Ms. Tamang's request was made largely through hand gestures and a couple of words Ms. Tamang learned in order to make the request.  *Id.*

On April 26, 2014, representatives from CASA de Maryland and Adhikaar drove a caravan of vehicles to Defendant Mehra's house, approached the front of the house and rang the

doorbell. Compl. at ¶39.  When Defendant Mehra opened the door, the representatives from Adhikaar and CASA de Maryland informed Defendant Mehra that they were there to retrieve Ms. Tamang.  *Id.*  An argument ensued, during which time Ms. Tamang slipped out of the house and joined the CASA de Maryland and Adhikaar representatives outside.  *Id.* Ms. Tamang was then transported away from Defendant Mehra's house, and ultimately travelled to New York City, where she has begun to try to forge a new life, including taking English lessons and other vocational trainings. *Id.*

The Amended Complaint alleges claims against the Defendants for: (1) violations of TVPRA; (2) failure to pay minimum wages as required by FLSA; and (3) breach of the employment contracts entered between Ms. Tamang and Defendants.

## STANDARD OF REVIEW

A complaint requires only "a short and plain statement" of the claim, Fed. R. Civ. P. 8(a)(2), that includes "fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks and alterations omitted)).  In assessing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff."  *Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).  Plaintiff need only plead "plausible grounds" that discovery will reveal evidence to support the allegations.  *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Twombly*, 550 U.S. at 556).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

6

## ARGUMENT

**I.    The Claims Made in the Amended Complaint Are Not Time-Barred and Should Not Be Dismissed**

**A.    The Law Does Not Support Defendants' Statute of Limitations Defense**

**i.    Plaintiff's  TVPRA claim is not time-barred**

Defendants incorrectly assert that a four-year statute of limitations commencing in November 2003 should apply to the Plaintiff's TVPRA claims against Defendants, and that Plaintiff's TVPRA claims are time-barred.  However, the statute of limitations for TVPRA violations is ten years, *see* 18 U.S.C. § 1595(c); *Cruz v. Maypa*, 773 F.3d 138, 144 (4th Cir. 2014), and Plaintiff's TVPRA claims were filed within ten years of the last violation of the TVPRA.

In their Motion to Dismiss, Defendants contend that because Plaintiff's employment with Defendants began in November 2003 and September 2004, respectively, when the applicable statute of limitations for a TVPRA claim was four years, the four-year statute of limitations applies and would have expired prior to the statute of limitations being expanded to ten years in December 2008.  However, as explained below, the Amended Complaint demonstrates that the elements of a TVRPA claim occurred within ten years of the inclusion of the TVRPA claims in the Amended Complaint in July of 2017.  Thus, because the ten-year limitations period is the applicable limitations period for Plaintiff's cause of action, and the Amended Complaint sufficiently alleges violations of the TVPRA within that timeframe, Plaintiff's TVPRA claims should reach back until at least July of 2007, ten years prior to TVPRA claims being included in this matter.

Under the TVPRA, "[w]hoever knowingly recruits, harbors, transports or obtains by any means, any person for labor or services in violation of this chapter" is liable for human

7

trafficking.  *See* 18 U.S.C. § 1590(a); *Baxla v. Chaudhri*, 225 F. Supp. 3d 588, 593 (E.D. Va.

Dec. 21, 2016).  Such violations of the chapter include obtaining labor services by force, which

includes threats of serious harm (*see* 18 U.S.C. § 1589(a)(2)), and confiscating or possessing

another person's immigration documents while benefitting financially from that confiscation or

possession.  *See* 18 U.S.C. §§ 1589, 1592, 1593A.  The Amended Complaint pleads facts that

plausibly allege that Defendants' TVPRA violations took place during the ten years prior to the

TVPRA claims being added to this matter, including the following facts:

- Defendants knowingly harbored Plaintiff in their homes for labor services by requiring her to divide her time between both of their houses from 2004 until the end of her employment period in 2014.  Compl. at ¶16.

- Plaintiff felt compelled to continue working for Defendants throughout the years or else face the serious harm of never recouping the years' worth of wages that they owe her and jeopardizing her relative's employment with Defendants' family members overseas. Compl. at ¶¶ 26 and 27.

- Ms. Tamang was told in 2013 that she could not receive her green card unless she returned to work for Defendants. Compl. at ¶33.

- Defendants confiscated Ms. Tamang's green card in 2013 and 2014 while benefiting financially from employing Ms. Tamang without paying Ms. Tamang's promised wages during the duration of her employment.  Compl. at ¶¶ 22-23, 34.

- Plaintiff was forced to work excessive hours for virtually no pay throughout her employment.  Compl. at ¶¶ 22-23, 31.

- Defendants never gave Ms. Tamang access to the bank account at which they claimed her wages were being held, and they refused to pay her the wages they claimed were accumulating in the bank despite Ms. Tamang's persistent pleas throughout the years.  Compl. at ¶22.

- Ms. Tamang was consistently told that she would be arrested if she tried to leave the Defendants' homes and Defendants' employment, and would then never be able to see Ms. Tamang's family in Nepal.  Compl. at ¶29.

Thus, even without the application of equitable tolling, Plaintiff has pleaded facts sufficient to

plead TVPRA violations within 10 years of the filing of her TVPRA claim.

Because the Amended Complaint pleads facts that plausibly give rise to timely TVPRA claims against Defendants, the Motion to Dismiss should be denied.

### ii.    Plaintiff's FLSA claim is not time-barred

Defendants incorrectly assert that the Plaintiff's FLSA claims against Defendants are time-barred.  The statute of limitations for a willful violation of an FLSA claim, as Plaintiff alleged in the Amended Complaint, is three years.  29 U.S.C. § 255(a); *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 130 (4th Cir. 2015).  This case was initiated within three years of the last violation of FLSA.

Specifically, the Amended Complaint alleges facts that show that within three years of Plaintiff's initiation of this action on March 29, 2017, Plaintiff was an employee of both Defendants.  Compl. at ¶¶35-37.   Until Ms. Tamang's escape on April 26, 2014, as had been the case for over a decade, Defendants continued to deny Ms. Tamang even minimum wages while requiring her to work nearly all day, every day.  Compl. at ¶35.  Thus, even without the application of equitable tolling, Plaintiff has alleged facts sufficient to plead a timely FLSA claim.

Because the Amended Complaint pleads facts that plausibly give rise to timely FLSA claims against Defendants, the Motion to Dismiss Plaintiff's FLSA claim should be denied.

### iii.    Plaintiff's Breach of Contract claim is not time-barred

Defendants incorrectly assert that the Plaintiff's breach of contract claim is time-barred. The statute of limitations for a breach of written contract, as alleged here, is five years.  Va. Code § 8.01-246(2).  This case was initiated within five years of breaches of contracts between Defendant Mehra, Defendant Nandwani and Plaintiff.

Specifically, the Amended Complaint pleads facts that plausibly give rise to breaches of, at a minimum, two written contracts between Defendants and the Plaintiff within five years of the filing of the Amended Complaint.  First, the Amended Complaint details a Contract for a G5 Domestic Employee between Defendant Mehra and Plaintiff that required Defendant Mehra to pay Plaintiff a rate of $8.41 per hour on a weekly or bi-weekly from June 15, 2010 to June 14, 2012.  Compl. at ¶11.  As discussed in the complaint, Defendant Mehra failed to pay those promised wages.  Compl. at ¶¶22-23.  When Plaintiff initiated this suit in March 2017, breaches of that contract on and after March 2012 were within the five-year statute of limitations period.

Second, as outlined in the Amended Complaint, in May 2013, Defendant Nandwani made a promise in writing to pay Plaintiff $12 per hour in exchange for 40 hours of work by Ms. Tamang per week.  Again, the Amended Complaint details Defendant Nandwani's failure to pay Ms. Tamang.  Compl. at ¶¶22-23.  When Plaintiff initiated this suit, breaches of this contract were within the five-year statute of limitations period.

Because the Amended Complaint pleads facts that plausibly give rise to timely breach of contract claims against Defendants, the Motion to Dismiss plaintiff's breach of contract claims should be denied.

### B.    The Amended Complaint Sufficiently Alleges That Circumstances Exist to Allow for Equitable Tolling of Any Applicable Statutes of Limitation

Tolling of a statute of limitations means "that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped." *United States v. Ibarra*, 502 U.S. 1, 4 n.2 (1991).  The Amended Complaint pleads that the 10-year statute of limitations for Plaintiff's TVPRA claim, 5-year statute of limitations for Plaintiff's breach of contract claim and 3-year statute of limitation for Plaintiff's FLSA claim

were each equitably tolled until she was ultimately rescued from Defendants in April 2014. Compl. at ¶¶39, 47.  As described in Section I(a)(i)-I(a)(iii), all of the claims in this action were commenced within the applicable statutes of limitations following Plaintiff's rescue.  Therefore, if Plaintiff's claims were equitably tolled until she was rescued, all of Plaintiff's TVPRA, FLSA and breach of contract claims that arose on or after the commencement of Plaintiff's employment by Defendants in the United States in November 2003 are timely.

"Equitable tolling is appropriate in two circumstances: first, when 'the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant,' and second, when 'extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.'" *Cruz*, 773 F.3d at 145-146   (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (internal quotation marks omitted).  Facts similar to those alleged in the Amended Complaint have been found to justify equitable tolling.  *See Deressa v. Gobena*, No. 1:05CV1334, 2006 U.S. Dist. LEXIS 8659, 2006 WL 335629, at *3-4 (E.D. Va. Feb. 13, 2006) (holding that plaintiff's FLSA and state law claims were tolled while she was held as a "virtual prisoner" by defendants, who threatened her with deportation and forbade her to leave their home).

Moreover, "[t]he statute of limitations is an affirmative defense  . . . and need not be negatived by the language of the complaint."  *Jones v. Rogers Mem'l Hosp.*, 442 F.2d 773, 775 (D.C. Cir. 1971); *see also Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-04950 (JFB) (ARL), 2009 WL 1706535, at *16 (E.D.N.Y. June 16, 2009) (finding that plaintiffs' complaint was not required to have set forth claims or allegations raising equitable tolling and denying defendants' motion for summary judgment as "premature").

11

Accordingly, the Court need not determine at this stage of the case whether the applicable statutes of limitations should be tolled.  Ms. Tamang has adequately alleged that circumstances existed to allow for such tolling, and she should be allowed to take discovery of the facts surrounding those circumstances, such as whether Defendants ever posted any notices of Ms. Tamang's rights under the applicable law and whether Defendants ever provided any opportunity for someone in Ms. Tamang's position to have exercised any legal rights she may have.  *See, e.g.*, *Cruz*, 773 F.3d at 147 (holding that failure to provide adequate notice of legal rights was basis for equitable tolling and remanding to allow for discovery related to equitable tolling); *Santamaria v. GL Construction, Inc.*, No. 115-cv-00259 (LMB/IDD), 2015 WL 13035523, at *3 (E.D. Va. Dec. 28, 2015) ("[T]he statute of limitations is equitably tolled when employers do not post notice of employees' rights under the FLSA."); *Deressa v. Gobena*, No. 1:05-cv-1334 (JCC), 2006 WL 335629, at *4 (E.D. Va. Feb. 13, 2006) (tolling the statute of limitations in a TVPRA/FLSA case similar to Ms. Tamang's in light of the "affirmative acts designed to prevent [Plaintiff] from obtaining her wages or taking steps to enforce her contractual and common law rights," which included allegations that "whenever she inquired about her pay, [defendants] answered her with a variety of misleading responses," such as claiming that [defendants] were holding [Plaintiff]'s money for her because she did not presently need it").

Consistent with other similar cases in this District, the Amended Complaint alleges facts sufficient to allow each of the relevant statutes of limitations to be equitably tolled.  Such facts include:

- Defendants' failure to notify Plaintiff of her rights under the FLSA. Compl. at ¶42.

- Plaintiff's lack of education and lack of ability to speak English, which Defendants exploited to carry out their scheme.  Compl. at ¶47.

- Plaintiff's isolation from others who would be in a position to assist her understand her rights under U.S. law.  *Id.*

- Defendants' possession and retention of her U.S. government issued identification card.  Compl. at ¶37.

- Defendants' withholding from Plaintiff of her earned wages, without which Plaintiff was unable to freely leave or seek assistance.  Compl. at ¶¶22-23.

- Threats to Plaintiff by Defendants' family that leaving Defendants' homes would result in arrest and detention.  Compl. at ¶28.

Each of these allegations support application of equitable tolling of Plaintiff's claims, and Defendants' Motion to Dismiss any portion of Plaintiff's claims as time-barred should be denied.

## II.   *The Level of Detail Provided in the Amended Complaint Regarding the Hours the Plaintiff Worked is More than Sufficient to Overcome a Motion to Dismiss*

In their Motion to Dismiss, Defendants incorrectly contend that the Amended Complaint fails to provide sufficient detail regarding the hours Ms. Tamang worked.  As described above, to overcome a motion to dismiss, the complaint must merely state facts that give fair notice of what is actually being claimed and the grounds on which those claims rest.  *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555 (noting that a complaint requires only "a short and plain statement" of the claim, Fed. R. Civ. P. 8(a)(2), that includes fair notice of what the claim is and the grounds upon which it rests).  Further, the Fourth Circuit has explicitly held that a detailed accounting of the hours worked is not necessary at the pleading stage of an FLSA claim and that a plaintiff need only plead facts that estimate the average workweek and the average rate of pay, or any other facts that make a plausible claim that the minimum pay under FLSA was not met. *Hall v. DirecTV*, 846 F.3d 757, 777 (4th Cir. 2017).

The Amended Complaint more than adequately meets the pleading standard set by the United States Supreme Court and applied in the FLSA context in *Hall*.  Specifically, the Amended Complaint:

- Estimates the number of hours that Ms. Tamang worked in a given week during her years of employment: 112-115 hours per week.  Compl. at ¶19;

- Estimates Ms. Tamang's rate of actual pay, or lack thereof, by noting that the customary practice of Defendants was to pay Ms. Tamang nothing (indeed at certain times years would pass without receiving any pay).  Compl. at ¶23; and

- Alleges that Ms. Tamang was only ever paid by the Defendants in nominal amounts on a sporadic basis during her many years under their employ.  *Id.*

These allegations that Ms. Tamang worked 112-115 hours per week for several years at a stretch without receiving any pay, and otherwise only received nominal amounts of pay on an inconsistent basis for the many years she was employed by Defendants are more than sufficient to plead a plausible claim for failing to pay minimum required wages under the FLSA, particularly since it is the employer's, not the employee's, burden to maintain detailed records of payment.  *See, e.g.*, *Morataya v. Nancy's Kitchen of Silver Spring, Inc.*, GJH-13-01888, 2016 U.S. Dist. LEXIS 66985, *8-9 (D. Md. May 20, 2016) (noting that the employer "has a duty to keep proper and accurate records of the employee's wages, hours, and other conditions and practices of employment") (internal citations and quotations omitted).

Even according to the out-of-circuit case law on which Defendants rely, the Amended Complaint provides enough detail regarding the hours the Plaintiff worked to sufficiently plead the Plaintiff's FLSA claim and overcome a motion to dismiss.   Specifically, Defendants' authority, *Landers v. Quality* holds that a detailed accounting of hours is not required for an FLSA claim to overcome a motion to dismiss: "We decline to impose a requirement that a plaintiff alleging failure to pay minimum wages or overtime wages must approximate the

number of hours worked without compensation.  *Landers v. Quality Communs. Inc.*, 771 F.3d 638, 646 (9th Cir. 2015).

Instead, the *Landers* court notes that "most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule are in the control of the defendants" and requires that a party asserting an FLSA claim provide facts that allege that during a specific period of time, the employer did not provide the minimum pay required.  *See Landers,* 771 F.3d at 645.

The Amended Complaint more than sufficiently pleads the hours Plaintiff worked without lawful pay.  Defendants' Motion to Dismiss Plaintiff's FLSA claim should be denied.

### III.   Count I of the Amended Complaint Sufficiently Pleads Facts to Allege a Prohibited Means of Forced Labor

Defendants wrongly claim that the Amended Complaint failed to sufficiently plead facts alleging a prohibited means of forced labor under 18 U.S.C. 1589(a). Dkt. 19 at 6-7.

Section 1589(a) makes liable:

[w]hoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
(2) by means of serious harm or threats of serious harm to that person or another person;
(3) by means of the abuse or threatened abuse of law or legal process; or
(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. 1589.[1]

---

[1]  Relatedly, Section 1590 makes liable "[w]hoever knowingly recruits, harbors, transports, provides, or obtains by any means any person for labor services in violation of [Title 18, Part I, Chapter 77]" and   Section makes liable "[w]hoever knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person—(1) in the course of a violation of section 1581, 1583, 1584, 1589, 1590, 1591, or 1594(a)."

The "serious harm" prohibited by the TVPRA "includes threats of *any* consequences, whether physical or non-physical, that are sufficient under all of the surrounding circumstances to compel or coerce a reasonable person in the same situation to provide or to continue providing labor or services." *Shukla v. Sharma*, No. 07-cv-2972 (CBA)(CLP), 2012 U.S. Dist. LEXIS 18392, *5 (E.D.N.Y. Feb. 14, 2012) (citing *United States v. Bradley*, 390 F.3d 145, 151 (1st Cir. 2004)) (emphasis added); *see also* 18 U.S.C. § 1589(c)(2) (defining "serious harm" to include "any harm, whether physical or nonphysical, including psychological, financial or reputational harm").  "'Abuse of the law or legal process' is "the use of threats of legal action, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed in order to coerce someone into working against that person's will."  18 U.S.C. § 1589(c)(1); *Shukla*, 2012 U.S. Dist. LEXIS 18392, *6.  *See also Baxla*, 225 F. Supp. 3d at 593 (citing *Shukla*).

In determining whether a Plaintiff has been forced to work, Courts have held that "a worker's 'employment and living conditions' may provide support for a jury's conclusion that a defendant's threats 'plausibly . . . compelled the victim[] to serve.'" *Shukla*, 2012 U.S. Dist. LEXIS 18392, *6 (citing *United States v. Farrell*, 563 F.3d 364, 373 (8th Cir. 2009) and *United States v. Veerapol*, 312 F.3d 1128, 1130-31 (9th Cir. 2002) (considering working conditions, including "excessive working hours," in analyzing involuntary servitude claim).

The Amended Complaint more than sufficiently pleads facts supporting a forced labor claim under the TVPRA under Section 1589(a) (and the related harboring and immigration document

confiscation provisions of Sections 1590 and 1592).[2]   Specifically, the Amended Complaint alleges that:

- Ms. Tamang was required by Defendants to care for their mother who frequently yelled at her and threatened that, if she left Defendants' home, she would be arrested and unable to see her family in Nepal again. Compl. at ¶29.

- Ms. Tamang was required to work long hours – up to 20 hours in a day.  Compl. at ¶¶18, 28, 31 and 35.

- Defendants refused to provide Ms. Tamang a paycheck or access to the bank account in which Ms. Tamang's money was purportedly being deposited.  Compl. at ¶22.

- Ms. Tamang was made to believe that refusal to continue working for Defendants would result in a total loss of the monies purportedly being deposited in this bank account to which Ms. Tamang had no access (a fear that came true in that after her rescue, Ms. Tamang was never provided the money she had earned during her employment).  Compl. at ¶¶22, 33.

- Defendants' denied Ms. Tamang access to a doctor in spite of Ms. Tamang's repeated requests for medical care.  Compl. at ¶31.

- Ms. Tamang was wholly dependent on Defendants for all necessities of life, including food, housing, clothing and transportation.  Compl. at ¶25.

- Ms. Tamang's sister was also employed by Defendants' family in India, causing Ms. Tamang to believe that ceasing work for Defendants would endanger the well-being of her sister.  Compl. at ¶26.

- Defendant Nandwani told Ms. Tamang that Ms. Tamang could only leave Defendants employment if she re-paid the fees paid for Ms. Tamang's green card application, an impossible request given that Defendants had paid Ms. Tamang virtually nothing during the course of her employment. Compl. at ¶30.

- The Defendants possessed and did not provide Ms. Tamang access to her Permanent Resident Card.  Compl. at ¶34.

---

[2] Without citing to any authority, Defendants appear to contend that that a civil forced labor claim under TVPRA must be pled with specificity to overcome a motion to dismiss.  Dkt. 19 at 6-7.  Regardless, however, of the level of specificity required to plead a TVPRA claim, the Amended Complaint provides detailed allegations supporting Ms. Tamang's claim, as described herein.

These allegations are consistent with other TVPRA cases in this District. For example, in *Baxla*, 225 F. Supp. 3d at 594, the Court denied a motion to dismiss TVPRA claims less egregious than those alleged here. In *Baxla*, the plaintiff alleged she was employed as a domestic worker in Virginia, worked excessive hours for below-lawful wages, was isolated from others due to her inability to speak English, was warned that unaccompanied departure from defendants' homes could result in arrest, and relied on defendants for transportation and provision of the small amounts of money she was given. *Baxla*, 225 F. 3d at 591. In another example from this District, the Court in *Lagasan v. Al-Ghasel* held that by alleging, among other things, that the plaintiff's identification documents were confiscated, defendants' family members physically threatened plaintiff, and the plaintiff was denied medical care, the complaint sufficiently pled a claim for forced labor under 18 U.S.C. 1589(a). 92 F. Supp. 3d 445, 453 (E.D. Va 2015).

Ms. Tamang's Amended Complaint more than adequately meets the level of specificity required to plead a forced labor claim under TVPRA by alleging facts consistent with those pled in *Baxla* and *Lagasan*.[3]

Instead of relying on established and applicable case law in this circuit, Defendants cite an out-of-circuit criminal decision to support their assertion that the Amended Complaint did not sufficiently plead its forced labor claims. The holding of this criminal case, *United States v. Peterson*, is inapposite to Ms. Tamang's case. In *Peterson*, the Court held that the criminal defendant's indictment under the TVPRA was insufficient because it used the generic terms from

---

[3] Courts in this District have also made clear that even in instances in which a Plaintiff leaves the physical presence of Defendants during the course of employment, TVPRA claims are still available. *Baxla*, 225 F. Supp. 3d at 593.

the statute and failed to "state the offense with particularity."  544 F. Supp. 2d 1363, 1375 (M.D. Ga. 2008).  Ms. Tamang's case is fundamentally different than *Peterson*.  First, the Amended Complaint does not merely use generic terms from the TVPRA statue to make its claims.  Second, and more importantly, pleading requirements in a civil matter are distinct from the pleading standard for a criminal indictment. *Compare Ashcroft v. Iqbal* at 678 (quoting *Twombly* 550 U.S. at 555) (noting that "detailed factual allegations are not required" in a civil complaint), *with United States v. Cruikshank*, 92 U.S. 543, (1875) ("A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances.").  It is appropriate that a criminal indictment would need to be pled with more specificity than a civil complaint because a civil defendant's personal liberty is not at stake in the way that a criminal defendant's is.  For those reasons, Defendants' argument against the sufficiency of the Plaintiff's forced labor claim is unpersuasive.

Lastly, Defendants reference the Amended Complaint's description of the Plaintiff's impoverished background and then inexplicably claim that including those details as "significant factors" to support a TVPRA claim would "open up anyone who would provide employment to the most needy, underprivileged, and unemployable to the risk that [those factors] would be held against them." Dkt. 19 at 7.  First, the details of Ms. Tamang's impoverished background were far from the only bases on which her TVPRA claims were made.  Further, Ms. Tamang's limited resources are rightfully asserted as significant factors when pleading her case as a whole.  Specifically, Defendants took advantage of the fact that Ms. Tamang was fleeing the poverty of her life in Nepal, she couldn't speak English and was isolated, and she lacked the education and resources to protect herself; those circumstances don't form the basis for Ms. Tamang's TVPRA claim, but they provide the proper context to demonstrate how the violations of the TVPRA were

executed.  By suggesting that employers would be deterred from employing a poor person in a lawful and fair manner merely because Defendants were held accountable for their egregious exploitation of Ms. Tamang, Defendants draw a perverse conclusion.

Because the Amended Complaint alleges a claim of forced labor under TVPRA that is plausible on its face, the Motion to Dismiss should be denied.

## IV.    Count III of the Amended Complaint Sufficiently Pleads Breach of Contract Claims Against Each Defendant

Without relying on any authority, Defendants incorrectly assert that Plaintiff's breach of contract claim should be dismissed in its entirety because the facts pled do not demonstrate the existence of a single employment contract signed by both parties in spite of the Plaintiff's use of the term "this contract" in the Amended Complaint.  The law says otherwise.

Under Virginia common law, the elements of a breach of contract claim are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's failure to meet that legally enforceable obligation; and (3) a resulting injury or harm to the plaintiff.  *See Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 449  (E.D. Va. 2009). To overcome a motion to dismiss, a Virginia breach of contract claim must plead facts that plausibly give rise to a claim for breach of contract.  *See Republic Ins. Co. v. Spring Menders, Inc.*, 2:11-cv-69, 2011 WL 2838179, at *5-6 (E.D. Va. July 14, 2011) (denying the motion to dismiss because the plaintiff's pleaded facts, if taken as true, give rise to a breach of contract claim).  For example, in *Republic*, the court held that the plaintiff overcame a motion to dismiss for failure to state its breach of contract claim because, even though the plaintiff's pleadings "could certainly [have been] more precise", the plaintiff's complaint succeeded at stating facts to support a prima facie breach of contract claim.  *Id.* at *6.

Here, the Amended Complaint sufficiently pleads facts to assert a prima facie Virginia breach of contract claim.  Specifically, the Amended Complaint

- Establishes a legally enforceable obligation by detailing the employment agreements between the Plaintiff and the Defendants.  Compl. at ¶¶10-13;

- Provides facts supporting a breach of that legally enforceable agreement by asserting Defendants' failure to pay Plaintiff, Compl. at ¶¶22-23, and deviation from the agreed upon work hours.  Compl. at ¶31 ; and

- States facts giving rise to the Plaintiff's economic and emotional injury resulting from the breach including, for example, her inability to eat and decline in health due to unbearable work hours.  Compl. at ¶28.

Because the Amended Complaint alleges facts that, if accepted as true, show a *prima facie* case of breach of contract that is plausible on its face, the Motion to Dismiss should be denied.

## V.   *There is No Valid Basis to Strike Any Portion of the Amended Complaint*

Defendants' include a meritless motion to strike the portions of the Amended Complaint that they purport are time-barred as well as paragraphs 48-53, which provides context for the Ms. Tamang's trafficking claims.  Under Federal Rule of Civil Procedure 12(f), a district court may, on its own or by motion of a party,[4] "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. Pro. 12(f).  Motions to Strike Pleadings are "generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic."  *See*

---

[4] If a party moves to have a pleading stricken, it should do so "**before** responding to the pleading".  Fed. R. Civ. Pro.  12(f)(2) (emphasis added).  Here, Defendants inserted a motion to strike into their response to the pleading.  Dkt. 19, section III.  Thus, this misplaced and ill-timed motion to strike is improper.  Further, this type of motion is disfavored and rarely granted even when properly made.  *Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624-CIO v. Virginia Intern. Terminals, Inc.*, 904 F. Supp. 500, 504 (E.D. Va 1995) ("[E]ven a properly made motion to strike is a drastic remedy which is disfavored by courts and infrequently granted.") (internal citations omitted).  In addition to being improper, and as discussed in this section, the motion to strike is meritless.

*Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (internal quotations omitted) (citing Federal Practice & Procedure).

The portions of the Amended Complaint that the Defendants move to strike are not redundant, immaterial, impertinent, or scandalous matters, and thus should not be stricken. First, as described above in Sections I.A-I.B, none of the claims in the Amended Complaint are time-barred. Second, the information pled in paragraphs 48-53 provides necessary context for the specific circumstances of Ms. Tamang's trafficking. Specifically, it details the abhorrent phenomenon of employers seeking G-5 visas to employee domestic workers, who are often fleeing poor home conditions for a better life, only to take advantage of their employees and exploit their lack of resources. Compl. at ¶¶48-53.

Further, Defendants misconstrue the Fourth Circuit case law on which they rely to support their motion to strike. Specifically, in *Waste Management*, the plaintiffs moved to strike an affirmative defense pled by the defendants. *Waste Managem*ent at 347. The Court upheld the lower court's decision to strike the affirmative defense, and noted that "a *defense* that might confuse the issues in the case and would not, under the alleged fact, constitute a valid defense to the action can and should be deleted." *Id.* (emphasis added) (internal citations omitted).

However, here, the Defendants have taken *Waste Management*'s holding to mean that a "motion to strike a portion of a pleading is appropriate for *language* that would confuse the issues and would not, under the facts alleged, constitute a valid *cause of action*." Dkt. 19 at 8 (emphasis added). As evidenced by the commentary to Rule 12 – which expressly states that Rule 12's subdivision (f) "affords a specific method of raising the insufficiency of a *defense*" – a motion to strike is not a tool to strike a cause of action. Fed. R. Civ. Pro. 12(f) advisory committee's note (1946). The holding in *Waste Management* specifically related to an

22

affirmative defense, and did not expand the role of Rule 12(f) to authorize the striking of the language Defendants seek to strike here.

Because no claim in the Amended Complaint amounts to a redundant, immaterial, impertinent, or scandalous matter, this court should disregard the Defendants' motion to strike.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety.[5]

Dated: August 14, 2017                              Respectfully submitted,


                                                    By: /s/ Maryam Hatcher
                                                    Maryam Hatcher (VSB No. 84252)
                                                    Beveridge & Diamond, P.C.
                                                    1350 I Street N.W., Suite 700
                                                    Washington, D.C. 20005
                                                    Telephone: (202) 789-6064
                                                    Fax: (202) 789-6190
                                                    mhatcher@bdlaw.com

                                                    Christine Dinan (VSB No. 84556)
                                                    Matthew K. Handley (admitted *pro hac vice*)
                                                    Washington Lawyers' Committee for
                                                    Civil Rights and Urban Affairs
                                                    11 Dupont Circle N.W., Suite 400
                                                    Washington, D.C. 20036
                                                    Telephone:  (202) 319-1000
                                                    Fax:  (202) 319-1010
                                                    matthew_handley@washlaw.org
                                                    christine_dinan@washlaw.org

                                                    ***Counsel for Plaintiff***

---

[5] If, however, the Court determines that any of the Plaintiff's claims have been insufficiently pled, Plaintiff respectfully requests leave to amend its Complaint to cure any such deficiencies. *See* Fed. R. Civ. Pro 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires.").

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of August, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jonathan A. Nelson (VSB No. 75247)
Christopher M. Day (VSB No. 39490)
Virginia State Bar No. 39490
Juris Day, PLLC
10521 Judicial Drive, Suite 200
Fairfax, Virginia 22030
Phone: (703) 268-5600
Fax: (703) 268-5602
jnelson@jurisday.com

*Counsel for Defendants*


By: */s/ Maryam Hatcher*
Maryam Hatcher (VSB No. 84252)
Beveridge & Diamond, P.C.
1350 I Street N.W., Suite 700
Washington, D.C. 20005
Telephone: (202) 789-6064
Fax: (202) 789-6190
mhatcher@bdlaw.com